IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | | |
|---|---|---|---|
| 1) | INDEPENDENT SCHOOL DISTRICT NO. 1 OF TULSA COUNTY, OKLAHOMA; and | ) ) ) | |
| (2) | JON MARC PULLIAM and CHRISTINE PULLIAM, Husband and Wife, | ) ) ) | Case No. 19-CV-161-CVE-JFJ |
| | Plaintiffs, | ) | (Removed from Tulsa County, |
| vs. | | ) | Oklahoma Case No. CJ-19-1118) |
| | | ) | |
| 1) | SODEXO MANAGEMENT, INC., | ) | Jury Trial Demanded. |
| | Defendant. | ) | Attorney's Lien Claimed |

**COMPLAINT IN INTERVENTION**

The Intervenors/Plaintiffs, Jon Marc Pulliam and his wife, Christine Pulliam (collectively, "Pulliams"), for their causes of action against the Defendant, Sodexo Management, Inc. ("Defendant"), allege and state:

**I.  Jurisdiction and Venue**

1.     At all times relevant hereto, Pulliams are and were residents of Glenpool, Oklahoma.

2.     Defendant is a New York corporation licensed to do business in the state of Oklahoma.

3.     Pulliams' claims and damages set forth herein arise from Plaintiffs' injuries and Defendant's negligence occurring in Tulsa, Tulsa County, Oklahoma.

**II.  Pulliams' Negligence Claim Against Defendant**

For their causes of action against Defendant, Pulliams allege and state:

4.     Pulliams reallege and restate Paragraphs 1 through 3 above as if same were set forth herein verbatim.

5.      On December 21, 2017, Plaintiff Jon Marc Pulliam ("Jon Marc"), sustained serious, on-the-job, near death, permanent, disfiguring and disabling injuries as a result of a fire within premises exclusively managed and controlled by Defendant.  Jon Marc was employed with Plaintiff School District (Tulsa Public Schools – "TPS") at the time of his injuries.  Defendant directly manages premises located at 1555 North 77th East Avenue, Tulsa, Oklahoma where Jon Marc sustained his injuries.

6.      Defendant performs its duties under a facilities Management Agreement with Plaintiff School District from offices it physically occupies at the location where the incident occurred.

7.      The facilities Management Agreement is dated June 23, 2014 and provides, in pertinent part, that Defendant will manage the "facilities" wherein School District and its employees work.  The Agreement, in part, provides the following:

a.      Facilities Management Services ("Definition").   All preventive maintenance, corrective maintenance, general maintenance, grounds maintenance, repair, custodial and other services provided by Sodexo as specified in the exhibits attached to this Agreement.  See attached Exhibit 1, Article II, Paragraph 2.1, page 1;

b.      Sodexo Management Employees.  Sodexo shall provide sufficient and qualified managers to supervise performance of the Services….;  See Exhibit 1, Article V, ¶5.1, p.2);

c.      Supervised Employees and District Management Employees.  Sodexo shall train and review, and shall exclusively supervise, manage and direct all supervised employees and district management employees in the performance of the Services, in accordance with Sodexo's operating policies and procedures and in accordance with [TPS'] employment (hiring, discharging, and disciplinary) practices and district collective bargaining agreement….   Sodexo shall, as an accommodation and acting solely as an agent for [TPS], maintain time records and furnish to [TPS] data from which [TPS] can formulate its regular payroll for all supervised employees and district management employees;  See Exhibit 1, Article V, ¶5.2, p. 2;

    d.       Training Programs.  Sodexo shall provide and maintain training equipment, films, slides, literature, daily work and project schedules, software, standard operational procedures and training manuals to be used in training the supervised employees and the district management employees.  These materials shall at all times remain under Sodexo's exclusive control and be deemed the property of Sodexo.  It is expressly understood and agreed that such training shall be sufficient for district employees to become qualified for advancement opportunities, as well as to provide succession planning within the district; See Exhibit 1, Article V, ¶5.5, p. 3;

    e.       Components of Sodexo's Contract Price.  Sodexo's contract price as set forth in Section 7.1 includes the following:

*   *   *

    F.       Manuals, forms, and training aids.

    G.       Sodexo supporting operations management, and supporting human resources, accounting, legal, training and development, and general administration functions.  See Exhibit 1, Article VII, ¶7.5, p. 5.

8.       Attached to the Agreement is a schedule Exhibit B entitled, "Areas to be Serviced."  Within Exhibit B, the property wherein Plaintiff was injured is identified as a "support site" with a title of "Maintenance."  Thus, the Agreement expressly identifies the location where Plaintiff was injured to be a location or "facility" which was under exclusive and direct management of Defendant, including the "supervised employees" of TPS who worked therein.

9.       Additionally, the Agreement included a document entitled "Maintenance Specifications" as part and parcel of Exhibit A to the Agreement.  Exhibit A to the Agreement, labeled "Scope of Services" (to be performed by Defendant under the Management Agreement), contained Defendant's contractual obligations:

    8.       General Responsibilities.

*   *   *

    M.       Manage general labor crew.

3

See Exhibit 1, Exhibit A.

10.     Jon Marc was a member of the TPS "general labor crew" and/or he was a "Supervised Employee" as same is defined under the Agreement.   The term "Supervised Employees" is defined as "[TPS's] non-management employees assigned to work in delivery of the Services."  See Exhibit 1, Article II, ¶2.4, p. 1.

11.     The Management Agreement was in full force and effect at the time of Jon Marc's injury.

12.     The Agreement between Defendant and TPS also provides in relevant and material part:

> Sodexo <u>shall</u> train and review, and shall exclusively supervise, manage and direct all Supervised Employees and District Management Employees in the performance of the services, in accordance with Sodexo's operating policies and procedures and in accordance with [TPS's] employment (hiring, discharging, and disciplinary) practices and district collective bargaining agreement. [TPS], as a general employer of the Supervised Employees and District Management Employees, shall hire, discharge or discipline Supervised Employees and District Management Employees upon Sodexo's reasonable request if such action is in accordance with [TPS's] policies and procedures.

See Exhibit 1, Article V, ¶5.2, p. 2.

13.     The Agreement also states, in relevant and material part:

> Training Programs.  Sodexo <u>shall</u> provide and maintain training equipment, films, slides, literature, daily work and project schedules, software, standard operational procedures and training manuals to be used in training the Supervised Employees and the District Management Employees.  These materials shall at all times remain under Sodexo's exclusive control and be deemed the property of Sodexo.  It is expressly understood and agreed that such training shall be sufficient for [TPS] employees to become qualified for advancement opportunities, as well as to provide succession planning within [TPS].

See Exhibit 1, Article V, ¶5.5, p. 3.

14.     At the time of Jon Marc's injuries, Jon Marc was working on the job with TPS and within the "scope of services" managed by Defendant.  Specifically, Jon Marc was a glass glazier with the duties and responsibilities to remove and replace glass in TPS facilities.

15.     Sue Ann Bell ("Bell"), at all times relevant hereto, was employed by Defendant as the "on-site" general manager or "Director" with the duty to assure a safe employment environment for Jon Marc.  Ann Marie Hayden ("Hayden"), at all times relevant hereto, was employed by Defendant as "Customer Service Manager" with the duty to assure a safe employment environment for Jon Marc.  Both Bell and Hayden's job descriptions required them to "comply with all Sodexo and client [TPS] policies, site rules, and statutory regulations relating to health & safety, safe working practices, hygiene, cleanliness, fire and COSHH."  Bell and Hayden breached their duties to Jon Marc for which they are liable for Pulliams' damages. Defendant is vicariously liable for Bell and Hayden's negligence.

16.     Under the terms and conditions of the Agreement, Defendant breached its duties with respect to protecting Jon Marc from injury in the performance of his employment responsibilities for TPS.

17.     Defendant, who occupies, with the intent to exclusively control, the premises wherein Jon Marc was injured, had the duty to Jon Marc, as an invitee and one subject to Defendant's management, to protect against foreseeable, dangerous conditions within the premises which it knew or should have known, by the exercise of reasonable care, would have discovered as being a dangerous condition and/or an unreasonable risk of harm to such invitees but failed to either recognize the dangerous condition or otherwise failed to protect or undertake the exercise of reasonable care to protect Jon Marc against the dangers.

18.     Additionally, Defendant, who had exclusive control of the premises, had common law duties to protect Jon Marc from his work place hazards.

19.     As manager of the premises wherein Jon Marc was injured by fire, Defendant had a duty to provide fire prevention, protection, and mitigation for Jon Marc in the premises, which such duty was breached by the Defendant.

20.     Pulliams incorporate herein by this reference the School District's theories of recovery against Defendant set out in its Complaint as if same were set forth herein verbatim.

21.     Defendant breached its duty to provide adequate, reasonable, and necessary fire prevention, protection and mitigation devices, plans, and training sufficient to both avoid and mitigate any bodily injuries to Jon Marc in the premises.

22.     Government regulations specific to cutting laminated glass require that proper safety measures be in place to avoid and mitigate the incident that happened in this particular case which include, but are not limited to:

a.     Providing flame resistant personal protective clothing;

b.     Providing proper instruction, training, and supervision of how a glazier should cut laminated glass;

c.     Avoiding the use of flammable liquids in cutting laminated glass;

d.     Containers holding flammable liquids used in the cutting of laminated glass should be in "approved covered containers"; and

e.     The manager should conduct a hazard assessment of the workplace where the cutting of laminated glass takes place.

See, for example, 29 CFR 1910.106; 29 CFR 1910.132; 29 CFR 1910.1200; 29 CFR 1910.133; and 29 CFR 1910.7.

23.     The Defendant is negligent per se due to its violation of these regulatory safety requirements and other safety bulletin(s).

24.     Defendant was negligent per se in its breach of applicable state and/or federal safety regulations directly applicable to Jon Marc's employment duties.

25.     Defendant's breach of its duties as alleged herein directly caused Jon Marc's injuries and Plaintiffs' collective damages.

26.     Defendant is paid more than $1,300,000 annually by TPS, through taxpayers of the City of Tulsa, to perform its duties under the Agreement and as otherwise required by law.

27.     As a result of Defendant's negligence, Jon Marc has been damaged in an amount in excess of $75,000 for his bodily injuries sustained as a result of a fire on the premises managed by Defendant.

28.     The Plaintiff, Christine Pulliam, the spouse of Jon Marc, has sustained loss of consortium damages as a result of the severe and permanent bodily injuries to her husband, for which she is entitled to damages and a judgment against Defendant in excess of $75,000.

29.     Defendant's acts and omissions with respect to its negligence amount to either gross negligence, reckless, and/or malicious life-threatening conduct for which Pulliams are entitled to punitive damages in excess of $75,000 to punish and otherwise deter Defendant and others similarly situate from failing to provide adequate, reasonable and necessary training, supervision, and management, and fire protection, prevention, and mitigation devices to invitees to their premises.

30.     Pulliams are entitled to pre- and post-judgment interest on any judgment rendered herein in their favor against Defendant for their damages resulting from Defendant's negligence.

31.     Pulliams are entitled to their costs in prosecuting this action.

WHEREFORE, premises considered, the Plaintiffs, Jon Marc Pulliam and Christine Pulliam, husband and wife, pray for money judgment against Defendant, Sodexo Management,

Inc., for actual damages in a sum in excess of $75,000, each, and for punitive damages in excess of $75,000, plus pre- and post-judgment interest at the highest rate allowed by law, attorney's fees and costs in prosecuting this matter, and for such other and further relief as the Court deems just and proper.

/s/Anthony P. Sutton
Anthony P. Sutton, OBA #8781
Sutton & Davis, PA
8908 South Yale, Suite 245
Tulsa, OK  74137-3543
918/742-0900
Attorney for Jon Marc and Christine Pulliam

## CERTIFICATE OF SERVICE

I certify that on the 26th day of April, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Eric D. Wade, Esq.                    William S. Leach, Esq.
ericw@rfrlaw.com                      bill.leach@mcafeetaft.com

/s/Anthony P. Sutton
Anthony P. Sutton